# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| The J.M. Smucker Company<br>One Strawberry Lane<br>Orville, Ohio 44667 | Civil Action No.: |
| Plaintiff, | Judge: |
| v. | |
| River West Brands LLC<br>141 West Jackson Boulevard,<br>Suite 3620<br>Chicago, Illinois 60604 | **COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |
| Defendant. | |

COMES NOW, Plaintiff, The J.M. Smucker Company, and for its Complaint against Defendant River West Brands, LLC states and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action against Defendant for its acts of fraud, theft of goodwill, trademark infringement, trademark dilution, unfair competition and deceptive trade practices.

## PARTIES, JURISDICTION AND VENUE

2. At all relevant times Plaintiff, The J.M. Smucker Company ("Smucker"), is and was a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located at One Strawberry Lane, Orville, Ohio 44667.

3. Upon information and belief, Defendant, River West Brands, LLC ("RWB"), is a limited liability corporation existing under the laws of the State of Delaware, located and doing business at 141 West Jackson Boulevard, Suite 3620, Chicago, Illinois 60604.

4. Defendant has purposefully directed its activities to the State of Ohio. Defendant derives a financial benefit from the commercial activities it conducts in the State of Ohio.

5. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338 and 2201 because it arises, in part, pursuant to 15 U.S.C. §§ 1114, 1116-1118 and 1125. This Court also has jurisdiction over Plaintiff's common law and state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2) and 1391(c). Defendant is a corporation subject to personal jurisdiction in this District, a substantial part of the acts and omissions giving rise to the claims set forth below occurred in this District and the intellectual property that is the subject of this action is located and maintained in this District.

## FACTS COMMON TO ALL COUNTS

**The Plaintiff**

7. Smucker is a leading marketer and manufacturer of fruit spreads, peanut butter, shortening and oils, ice cream toppings, sweetened condensed milk and health and natural foods beverages in North America.

8. For over 108 years, Smucker has been a family-run business headquartered in Orrville, Ohio. The founder of Smucker, Jerome Monroe Smucker, sold his products from the back of a horse-drawn wagon with each jar of product bearing his hand-signed seal as his personal guarantee of quality. Today, his great-grandsons, Mr. Richard K. Smucker and Mr. Timothy P. Smucker, the Co-Chief Executive Officers of Smucker, continue to guide the company by applying their great-grandfather's solid, Midwestern values.

9. Smucker is the quintessential family-founded and consumer-oriented American manufacturing company. In addition to its facilities in Orville, Ohio, it also manufacturers

product across the United States in Toledo, Ohio, Cincinnati, Ohio, Lexington, Kentucky, Scottsville, Kentucky, Seneca, Missouri, Memphis, Tennessee, New Bethlehem, Pennsylvania, Chico, California, Havre de Grace, Maryland, Ripon, Wisconsin and El Paso, Texas.

10. In order to ensure that its founder's personal commitment to its customers is maintained, Smucker operates from its core "Basic Beliefs" of Quality, People, Ethics, Growth and Independence.

11. Smucker applies its high standard of Quality to its products, its manufacturing methods, its marketing efforts and its family of employees. For more than a century, Smucker has operated on the principle that Quality comes first. Of particular importance to Smucker, is maintaining the same strong, ethical values upon which the Company was founded. Smucker maintains the highest standards of business ethics with its customers, suppliers, employees, and shareholders, and within the communities in which it operates.

12. As a direct result of Smucker's century-long commitment to its core beliefs and its customers, the general public and its competitors have come to associate high quality goods with the SMUCKER'S trademark and Smucker's family of related trademarks.

**The PURITAN Brand**

13. The Smucker family of marks includes *Smucker's®*, *Jif®*, *Crisco®*, *Pillsbury®* (by license), *Eagle Brand®*, *R.W. Knudsen Family®*, *Hungry Jack®*, *White Lily®*, *Martha White®*, and *Puritan®,* among others.

14. Consistent with its overall basic beliefs and its commitment to providing consumers with high quality goods, in 2002 Smucker acquired the *Jif®*, *Crisco®* and *Puritan®* brands from another Ohio company, Procter & Gamble Ohio Brands Company, a wholly owned subsidiary of The Procter & Gamble, Company (collectively "P&G").

15. Much like most of the Smucker marks, *Crisco*® and *Puritan*® were first used nearly 100 years ago. Over almost a century of use, *Crisco*® and *Puritan*® have come to be recognized and trusted among generations of consumers.

16. PURITAN was first used as cooking oil in commerce at least as early as August 1, 1908. In 1967, P&G reformulated the PURITAN cooking oil and began to market PURITAN sunflower oil as an alternative to other vegetable oils which contained more polyunsaturated fats.

17. In 1988 the formulation of the cooking oil marketed under the PURITAN mark was changed to 100% canola oil after the discovery of the benefits of canola oil. At this same time, cooking oil sold under the PURITAN mark began to be marketed as a product that had lower saturated fats.

18. Even though the PURITAN brand is now 100 years old, for over 40 years, cooking oil marketed under the PURITAN name has been synonymous with a healthier lifestyle. Thus, when Smucker purchased the PURITAN mark, it began to consider new formulations and strategies to ensure the continued association between healthy living and PURITAN cooking oil.

19. After years of research and study, in 2008, Smucker introduced yet another innovation in vegetable oils when it launched its "Crisco PURITAN Canola Oil with Omega-3 DHA." This new formulation of PURITAN cooking oil is the first canola oil with Omega-3 DHA added. Samples of fliers and coupons related to the newly launched reformulation of PURITAN oil are attached hereto as Exhibit A and are incorporated by reference herein.

20. The rights of Smucker in PURITAN are embodied, in part, in United States Trademark Registration Number 822031 for the mark PURITAN which was sought in 1965 in connection with edible fats and oils. A true and correct copy of United States Trademark

Registration Number 822031 is attached hereto as Exhibit B and is incorporated by reference herein.

21. Smucker and its predecessor have spent millions of dollars marketing cooking oils under the PURITAN mark.  As a direct result of the time and effort promoting the PURITAN mark, Smucker's customers, its competitors and the general public have come to associate high quality cooking oils offered by Smucker with the PURITAN mark.  The PURITAN mark is famous and has become a very valuable asset.

**The Defendant**

22. RWB holds itself out as a company that "systematically focuses on the acquisition and re-commercialization of brands".  Relevant excerpts of the RWB website are attached hereto as Exhibit C and are incorporated by reference herein.

23. According to the RWB website, RWB was founded in 2002.

24. Upon information and belief, RWB does not have any manufacturing or production facilities.

25. Upon information and belief, RWB does not actually make, sell, or distribute any goods.

26. While it maintains no capacity to make, sell or distribute anything, since 2002 RWB has filed no fewer than **121** intent-to-use trademark applications according to records maintained by the United States Patent and Trademark Office ("USPTO").

27. An intent-to-use application permits a company, or individual, to seek protection for a trademark even though that person or company has not yet sold a product in commerce in connection with the trademark.  Significantly, a required element of every intent-to-use application filed with the federal government is a sworn statement that the party seeking it has a "*bona fide intention to use the mark in commerce.*"  Prior to the actual registration of an intent-

to-use trademark, the party must also submit a sworn statement attesting to its actual use of the mark in commerce.

28. While RWB has submitted a sworn statement regarding its intent-to-use trademarks no fewer than 121 times, it has failed to file any statement of actual use in connection with more than half of those applications.

**Defendant's Scheme to Pirate Goodwill, Unlawfully Register Marks and Deceive the Public**

29. Upon information and belief, unlike Smucker, RWB core beliefs have little to do with either quality or ethics.

30. Upon information and belief, RWB's entire business model is premised upon the pirating of the goodwill developed by others in an attempt to deceive the consuming public.

31. As stated on RWB's website, the company's sole purpose is to:

> [A]cquire rights to dormant consumer brands, revitalize them for modern relevance, reconstruct the business model for today's marketplace, and ultimately return these brands to the consumer.

32. RWB admits on its website that its business model is premised on using the previously developed goodwill in these "dormant" brands to sell new products to unsuspecting consumers:

> If you're a manufacturer and are developing a better mousetrap, and you think that a base of consumer awareness and excitement can help your product launch and line extension, or if you are a retailer or distributor or you think that a proven credible real brand can help you drive pricing, turns and consumer loyalty, we look forward to hearing from you.

33. The RWB business model is contrary to the very purpose of the Lanham Act.  The Lanham Act was enacted to protect consumers and competitors from a wide variety of

misrepresentations related to products and services in commerce.  Indeed, as specifically set forth in the Lanham Act:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce…to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks…

34. Indeed, RWB has admitted on its website and in numerous interviews to the press, that its business model is premised on deceiving the public as to the source and nature of new, unrelated goods sold in connection with famous brands.  As RWB's own Founder and President, Paul W. Earle, Jr., admitted in an interview in 2004, "you can uninstall software from a computer but you can't uninstall a brand name from someone's head."  A true and correct copy of the December 6, 2004 article "Dead Brands Walking" from Crain's Chicago Business is attached hereto as Exhibit D and is incorporated by reference herein.

35. In order to profit from the goodwill of others and also profit from deceiving consumers, RWB's business includes filing fraudulent intent-to-use applications for trademarks owned by other companies, filing cancellation proceedings against already registered trademarks, and then attempting to extort payment from those companies who own the already registered marks.  Alternatively, RWB seeks to resell or license the marks in its applications to unaffiliated third parties.

36. For example, RWB has in the past filed intent-to-use applications and cancellation proceedings related to marks owned by such entities as Federated Department Stores (I. MAGNIN), H.J. Heinz Corporation (GAINES), Mars, Inc. (MARATHON), Mister Donut of America, Inc. (MISTER DONUT), and Hardee's Food Systems, Inc. (BURGER CHEF).

37. RWB has also actively engaged in a scheme to deceive and confuse consumers by registering, or assisting in the registration of, marks like NUPRIN and BRIM.

38. NUPRIN was originally sold as ibuprofen by Bristol Myers Co.  The sale of products under this mark was discontinued in 2001.  Upon information and belief, in 2005, RWB facilitated the registration of the NUPRIN mark with the intent of pirating the goodwill of the previously used NUPRIN name and deceiving the public into believing it was buying the original product previously sold as NUPRIN.

39. Indeed, RWB touts on its website:

> No longer just ibuprofen, Nuprin® is currently available as a powerful and trusted 'masterbrand' across a range of pain relief segments

40. RWB activities amount to the unlawful use and trafficking in the trademarks and goodwill of others through the filing of fraudulent intent-to-use application.

41. Upon information and belief, given RWB's business model, its history of failing to use dozens of trademarks for which it has applied, and its complete lack any capacity to make, sell or distribute anything, RWB does not and cannot have any bona fide intent-to-use any trademark for which it applies.

**Defendant's Attempt to Pirate the PURITAN Mark**

42. On January 11, 2004, RWB first attempted to pirate Smucker's PURITAN mark and the goodwill associated therewith by filing an application for PURITAN with the USPTO.  A true and correct copy of RWB's 2004 PURITAN application is attached hereto as Exhibit E and is incorporated by reference herein.

43. On August 5, 2004, the USPTO issued an Office Action refusing to register PURITAN on the basis that it was likely to be confused with Smucker's already existing

trademark for PURITAN.  A true and correct copy of the August 5, 2004 Office Action is attached hereto as Exhibit F and is incorporated by reference herein.

44. Undeterred by the rights of Smucker in a trademark that had been in use for nearly 100 years, again on December 12, 2005, RWB filed an application for the mark PURITAN.  A true and correct copy of RWB's 2005 PURITAN application is attached hereto as Exhibit G and by reference herein incorporated.

45. Although RWB was clearly aware of Smucker's superior and preexisting rights to the PURITAN mark, counsel for RWB declared under penalty of perjury in signing the application that "to the best of his knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce."

46. Once again, on March 10, 2006, the USPTO issued an Office Action refusing to register PURITAN on the basis that it was likely to be confused with Smucker's already existing trademark for PURITAN.  A true and correct copy of the March 10, 2006 Office Action is attached hereto as Exhibit H and is incorporated by reference herein.

47. On June 1, 2006, determined to pirate the goodwill developed by Smucker and its predecessors, and in furtherance of its scheme to traffic in Smucker's PURITAN mark, RWB filed a frivolous cancellation proceeding with the Trademark Trial and Appeal Board ("TTAB") alleging that Smucker had abandoned the PURITAN trademark.

48. Not satisfied with the pace of the proceedings before the USPTO and the TTAB, RWB continued to use and traffic in Smucker's PURITAN mark when on April 14, 2008, RWB threatened to file suit against Smucker for its continued use of the PURITAN mark.  A true and correct copy of the April 14, 2008 letter from counsel for RWB to counsel for Smucker is attached hereto as Exhibit I and is incorporated by reference herein.

**The Continued Use of the PURITAN Mark**

49. Neither Smucker nor its predecessor ever abandoned the PURITAN mark.

50. While the end-use consumer labels for PURITAN oil were modified in 2000, from 2000 through 2006, the PURITAN mark was used in connection with sales to grocery stores and other retail outlets, grocery scan data, trade sales data, on consumer receipts and on shelf placements.

51. During its negotiations for the purchase of the *Crisco*® brands, and after acquisition of those brands, Smucker intended to relaunch the PURITAN mark in connection with a new formulation of cooking oil.

52. Smucker has actively tested and considered the best manner in which to relaunch the PURITAN mark in connection with a new formulation of cooking oil.

53. Earlier this year, in January 2008, Smucker relaunched the PURITAN mark in connection with a new formulation of cooking oil and began selling its "Crisco PURITAN Canola Oil with Omega-3 DHA."

54. Subsequently, as noted above, RWB's counsel sent a letter on April 14, 2008 claiming that Smucker was infringing RWB's rights in a trademark for which Smucker owns an incontestible Federal Trademark Registration. In that letter, RWB threatened to file suit against Smucker for its continued use of the PURITAN mark.

### COUNT I
### DECLARATORY JUDGMENT AS TO VALIDITY AND ABANDONMENT
### 15 U.S.C. §§ 1114 AND 1125(a) and 28 U.S.C. § 2201

55. Smucker incorporates each and every allegation of Paragraphs 1-54 of this Complaint as though fully set forth herein.

56. As a result of Defendant's filing of the cancellation proceeding with the TTAB and its demand that Smucker cease and desist use of the PURITAN mark in its April 14, 2008

letter, Smucker believes that Defendant will file a lawsuit against Smucker if it continues to use the PURITAN mark.

57. Defendant's claim that Smucker's use of the PURITAN mark infringes RWB's rights creates an actual case or controversy for purpose of 28 U.S.C. § 2201.

58. Smucker seeks a declaration that the PURITAN mark has never been abandoned.

59. Smucker seeks a declaration that its registered PURITAN mark is valid and enforceable.

60. Smucker seeks a declaration as to its rights in and to its PURITAN mark and that RWB has no such rights.

61. As the result of its rights in and to PURITAN, Smucker is entitled to a declaration from this Court that it has not and cannot infringe any mark purportedly owned by RWB.

## COUNT II
## TRADEMARK INFRINGEMENT
## 15 U.S.C. §§ 1114 AND 1125(a)

62. Smucker incorporates each and every allegation of Paragraphs 1-61 of this Complaint as though fully set forth herein.

63. Smucker's use of the PURITAN mark predates any alleged use by Defendant in the United States.

64. Defendant's use of the PURITAN mark, in connection with its scheme to traffic in the marks and goodwill owned by others, is likely to deceive and cause confusion and mistake among customers as to the source or origin of the goods provided or offered for sale by Defendant and the sponsorship or endorsement of those goods by Smucker.

65. Defendant's use of the PURITAN mark, in connection with its scheme to traffic in the marks and goodwill owned by others, is likely to deceive and cause confusion and mistake

among consumers as to the source of origin of the goods provided by Smucker and the sponsorship or endorsement of those goods by Defendant.

66. Smucker has never authorized, licensed or otherwise condoned or consented to Defendant's use of the PURITAN mark.

67. Defendant has misappropriated and continues to misappropriate Smucker's' substantial property rights in the PURITAN mark, as well as the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will continue and will permit it to improperly interfere with Smucker's' continued promotion and expansion of the PURITAN mark.

68. As a result of Defendant's unlawful activities, Smucker has and continues to suffer irreparable harm.

69. As a direct and proximate result of Defendant's unlawful activities, Smucker has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

### COUNT III
### FEDERAL UNFAIR COMPETITION
### 15 U.S.C. §§ 1114 AND 1125(a)

70. Smucker incorporates each and every allegation of Paragraphs 1-69 of this Complaint as though fully set forth herein.

71. Defendant's use of the PURITAN mark, in connection with its scheme to traffic in the marks and goodwill owned by others, is likely to deceive and cause confusion among consumers as to the source of origin of the goods offered by Smucker and the sponsorship or endorsement of those goods by Defendant.

72. Smucker has never authorized, licensed or otherwise condoned or consented to Defendant's use of the PURITAN mark.

73. Defendant has misappropriated and continues to misappropriate Smucker's' substantial property rights in the PURITAN mark, as well as the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will permit Defendant to gain an unfair competitive advantage over Smucker and allow Defendant to improperly interfere with Smucker's' continued promotion and expansion of its business.

74. The acts of Defendant alleged above were committed willfully, with full knowledge of Smucker's rights and with the intention to deceive and mislead the public.

75. The acts of Defendant alleged above were committed willfully, with full knowledge of Smucker's rights and with the intention of causing harm to Smucker.

76. The acts of Defendant alleged above were committed willfully, with full knowledge of Smucker's rights and with the intention of misappropriating and wrongfully trading upon the valuable goodwill and reputation of Smucker and the PURITAN mark.

77. Defendant will continue its acts of unfair competition, causing irreparable injury to Smucker, unless such activities are enjoined by this Court.

78. As a direct and proximate result of Defendant's unlawful activities, Smucker has and continues to suffer damages in an amount which is not presently ascertainable, but will be established at trial.

## COUNT IV
## FEDERAL TRADEMARK DILUTION
## 15 U.S.C. §1125(c)

79. Smucker incorporates each and every allegation of Paragraphs 1-78 of this Complaint as though fully set forth herein.

80. The PURITAN mark has become famous in accordance with the standard set forth in 15 U.S.C. § 1125(c)(1).

81. Defendant began using the PURITAN mark after it became famous.

82. Smucker has never authorized, licensed or otherwise condoned or consented to Defendant's use or registration of the PURITAN mark.

83. Defendant is diluting the distinctiveness of the PURITAN mark.

84. Defendant's actions are disparaging the distinctiveness of the PURITAN mark.

85. Defendant's actions are blurring the distinctiveness of the PURITAN mark.

86. Defendant will continue its acts of dilution, causing irreparable injury to Smucker, unless such activities are enjoined by this Court.

87. As a direct and proximate result of Defendant's unlawful activities, Smucker has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

## COUNT V
## FRAUD UPON THE UNITED STATES TRADEMARK OFFICE

88. Smucker incorporates each and every allegation of Paragraphs 1-87 of this Complaint as though fully set forth herein.

89. Upon information and belief, RWB was aware of Smucker's' superior rights in the PURITAN mark at the time it filed its application to register that mark with the United States Patent and Trademark Office.

90. At the time its application was filed, RWB attested under oath, that no other entity, to the best of its knowledge and belief, had the right to use the mark.

91. That statement was knowingly false as RWB knew Smucker maintains a trademark registration and uses the identical mark in connection with identical goods.

92. The USPTO relied upon RWB's knowingly false statement. Without RWB's knowingly false statement, the USPTO would not have accepted RWB's application.

-14-

93. In filing an application to register the PURITAN mark, when it knew that Smucker was the senior user of the PURITAN mark, RWB committed fraud upon the USPTO.

94. Defendant will continue to perpetuate its fraudulent activities, causing irreparable injury to Smucker, unless such activities are enjoined by this Court.

95. As a direct and proximate result of Defendant's fraudulent activities, Smucker has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

## COUNT VI
## DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER OHIO LAW
## OHIO REV. CODE, § 4165.02

96. Smucker incorporates each and every allegation of Paragraphs 1-95 of this Complaint as though fully set forth herein.

97. Through the conduct described herein, Defendant has engaged in unfair competition and deceptive trade practices in violation of Ohio Revised Code § 4165.02.

98. Defendant's conduct has caused, and unless enjoined by the Court, will continue to cause, irreparable injury to Smucker's business and reputation for which there is no adequate remedy at law.

99. The conduct of the Defendant has been deliberate and willful and has been committed with the intent to cause confusion and mistake, to deceive the public, and/or to misrepresent the affiliation, connection or sponsorship of the Defendant's goods and commercial activities with Smucker.

100. Defendant will continue its acts of unfair competition and deceptive trade practices, causing irreparable injury to Smucker, unless such activities are enjoined by this Court.

101. As a direct and proximate result of Defendant's unlawful activities, Smucker has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

### COUNT VII
### UNFAIR COMPETITION UNDER OHIO LAW

102. Smucker incorporates each and every allegation of Paragraphs 1-101 of this Complaint as though fully set forth herein.

103. Smucker's use of and rights in the PURITAN mark predates Defendant's application to register the PURITAN mark.

104. Defendant's actions in connection with its scheme to traffic in the marks and goodwill owned by others, is likely to deceive and cause confusion and mistake among consumers as to the source or origin of the goods provided by or sold by Defendant and the sponsorship or endorsement of those goods provided by or sold by Smucker.

105. Smucker has never authorized, licensed or otherwise condoned or consented to Defendant's use of the PURITAN mark.

106. The conduct of Defendant, as alleged herein, constitutes unfair competition under the common law of Ohio.

107. Defendant's conduct has been deliberate and willful and has been committed with the intent to cause confusion and mistake, to deceive the public, and/or to misrepresent the affiliation, connection or sponsorship of the Defendant's commercial activities with Smucker.

108. Defendant will continue its acts of unfair competition, causing irreparable injury to Smucker, unless such activities are enjoined by this Court.

109.  As a direct and proximate result of Defendant's unlawful activities, Smucker has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order:

A.  Declaring that Smucker's PURITAN mark as embodied, in part, in United States Trademark Registration Number 822031 was not abandoned and is valid and enforceable;

B.  Declaring that RWB has no right in the PURITAN mark;

C.  Preliminarily and permanently enjoining Defendant, or anyone else acting in concert with it, or on its behalf from:

   1.  Using any reproduction, copy or colorable imitation of the PURITAN mark or any mark confusingly similar thereto, including specifically manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products bearing any reproduction, copy or colorable imitation of the PURITAN mark, without the express authorization, license or consent of Smucker; or

   2.  Filing or prosecuting any trademark application for any mark containing the word "puritan" to be used in connection with vegetable cooking oils.

D.  Requiring Defendant to deliver up for destruction to Plaintiff all unauthorized products, advertisements or other documents in its possession or under its control

    bearing the PURITAN mark or any simulation, reproduction, copy or colorable imitation thereof, pursuant to 15 U.S.C. §1118;

E.   Awarding to Plaintiff the damages it sustained as a result of Defendant's wrongful acts;

F.   Awarding to Plaintiff Defendant's profits pursuant to 15 U.S.C. § 1117;

G.   Awarding to Plaintiff treble damages pursuant to 15 U.S.C. § 1117;

H.   Awarding to Plaintiff its costs and attorneys' fees pursuant to 15 U.S.C. § 1117;

I.   Awarding to Plaintiff punitive damages as a result of Defendant's willful and wrongful acts; and

J.   Granting Plaintiff any further relief that the Court deems to be just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues triable thereby.

Dated this 8th day of May, 2008.

                            Respectfully submitted,

                            /s/ Timothy P. Fraelich
                            Timothy P. Fraelich (Ohio No. 0062468)
                            James W. Walworth, Jr. (Ohio No. 0074174)
                            JONES DAY
                            North Point
                            901 Lakeside Avenue
                            Cleveland, OH  44114-1190
                            Telephone:  (216) 586-3939
                            Facsimile:   (216) 579-0212
                            tfraelich@JonesDay.com
                            jwalworth@JonesDay.com

                            **ATTORNEYS FOR PLAINTIFF**
                            **THE J.M. SMUCKER COMPANY**